No. 24-5979

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ORACLE INTERNATIONAL CORP., a California corporation; and
ORACLE AMERICA, INC., a Delaware corporation,

*Plaintiffs-Counterdefendants-Appellees,*

*v.*

RIMINI STREET, INC., a Delaware corporation; and
SETH RAVIN, an individual,

*Defendants-Counterclaimants-Appellants.*

---

On Appeal from the United States District Court
For the District of Nevada (Hon. Miranda M. Du)
No. 2:14-cv-01699-MMD-DJA

---

### PUBLIC REDACTED VERSION

### OPENING BRIEF FOR APPELLANTS
### RIMINI STREET, INC. AND SETH RAVIN

---

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
(202) 682-7511
Mark.Perry@weil.com

Jeremy M. Christiansen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Eric D. Vandevelde
Blaine H. Evanson
Casey J. McCracken
Chris Whittaker
Joseph A. Gorman
James A. Tsouvalas
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
(949) 451-3805
BEvanson@gibsondunn.com

*Attorneys for Defendants-Appellants Rimini Street, Inc. and Seth Ravin*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that Appellant Rimini Street, Inc. is a publicly traded corporation and has no parent corporation, and there is no publicly held corporation that owns 10% or more of its stock. Appellant Seth Ravin is an individual.


Dated: March 11, 2025

s/ Blaine H. Evanson
Blaine H. Evanson

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ..................................................... 5

ISSUES PRESENTED.......................................................................... 5

CONSTITUTIONAL AND STATUTORY PROVISIONS ................. 5

STATEMENT OF THE CASE ............................................................. 5

    I.    The Parties' Claims, Discovery, and the Mixed Results Following the Bench Trial. ............................................... 7

        A.    Oracle's Failed Damages Claims. .......................... 7

        B.    Claims of Infringement/Non-Infringement............. 8

        C.    Oracle's Lanham Act Claims. ................................15

        D.    Oracle's DMCA Claim. .........................................16

    II.    The District Court Awards Oracle $58 Million in Fees and Costs While the Appeal of the Judgment and Injunction Is Pending.........................................................17

    III.    This Court Reverses and Vacates the Merits Judgment and Injunction.........................................................19

SUMMARY OF THE ARGUMENT ...................................................21

STANDARD OF REVIEW ................................................................23

ARGUMENT......................................................................................23

    I.    This Court's Decision Vacating the Injunction Requires Reversal or Vacatur of the Fee and Costs Award. ...........23

        A.    Oracle Cannot Be the Prevailing Party Now That the Court Has Vacated the Injunction. ...........................24

ii

## TABLE OF CONTENTS
### (continued)

**Page**

B.     Regardless of Which Party Is Deemed "Prevailing," No Fee Award to Oracle Is Appropriate Under the Applicable Statutes. ...................................................................33

    1.     The Copyright Act. ............................................................33

    2.     The Lanham Act. ..............................................................39

    3.     The DMCA. .....................................................................43

II.     The District Court Committed Multiple Legal Errors That Further Require Reversal or Vacatur of the Fee Award. ....................46

III.     The $58 Million Award Is Unreasonable and Excessive. ..................51

CONCLUSION ....................................................................................59

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996)........................................................32

*Berkla v. Corel Corp.*,
  302 F.3d 909 (9th Cir. 2002)....................................................34, 50

*BillFloat Inc. v. Collins Cash Inc.*,
  105 F.4th 1269 (9th Cir. 2024)................................................40, 52

*Bode v. United States*,
  919 F.2d 1044 (5th Cir. 1990)......................................................55

*Cadkin v. Loose*,
  569 F.3d 1142 (9th Cir. 2009)..................................................30, 47

*Corder v. Brown*,
  25 F.3d 833 (9th Cir. 1994)..........................................................56

*Dep't of Educ., State of Hawaii v. Rodarte*,
  127 F. Supp. 2d 1103 (D. Haw. 2000)...........................................25

*Doc's Dream, LLC v. Dolores Press, Inc.*,
  959 F.3d 357 (9th Cir. 2020)........................................................33

*Doe 1 v. GitHub, Inc.*,
  2024 WL 235217 (N.D. Cal. Jan. 22, 2024)..................................45

*E. Iowa Plastics, Inc. v. PI, Inc.*,
  832 F.3d 899 (8th Cir. 2016)........................................................33

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996)..........................................................51

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)......................................... 19, 37, 40, 44, 45, 48

*Gonzalez v. Allied Collection Servs., Inc.*,
  852 F. App'x 264 (9th Cir. 2021)..................................................52

*Gracie v. Gracie*,
  217 F.3d 1060 (9th Cir. 2000)......................................................55

*H&H Pharms., LLC v. Chattem Chems., Inc.*,
  2024 WL 4523807 (9th Cir. Oct. 18, 2024)..............................26, 27

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d 1213 (9th Cir. 2008)......................................................33

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Harbor Breeze Corp. v. Newport Landing Sportsfishing, Inc.*,
　28 F.4th 35 (9th Cir. 2022) ................................................................41

*Hayburn's Case*,
　2 Dall. 409 (1792) ...........................................................................21

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ...................................... 34, 44, 48, 52, 53, 54, 55, 56, 57, 59

*Hopkins v. City of Sierra Vista*,
　931 F.2d 524 (9th Cir. 1991) .........................................................1, 26

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
　755 F.3d 1038 (9th Cir. 2014) ..........................................................38

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
　68 F.4th 1203 (9th Cir. 2023) ...............................................40, 42, 43

*Kiewit Power Constructors Co. v. City of L.A.*,
　813 F. App'x 261 (9th Cir. 2020) ......................................................32

*Kirtsaeng v. John Wiley & Sons, Inc.*,
　579 U.S. 197 (2016) .....................................................................34, 48

*Klune v. Palo Verde Health Care Dist.*,
　761 F. App'x 751 (9th Cir. 2019) ......................................................32

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
　71 F.3d 996 (2d Cir. 1995) ...............................................................41

*Lackey v. Stinnie*,
　604 U.S. ---, 2025 WL 594737 (Feb. 25, 2025) ............................24, 25, 47

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
　964 F.2d 965 (9th Cir. 1992) ............................................................39

*Long v. Coast Resorts, Inc.*,
　267 F.3d 918 (9th Cir. 2001) ............................................................27

*Love v. Assoc. Newspapers, Ltd.*,
　611 F.3d 601 (9th Cir. 2010) ............................................................23

*Lovell by and Through Lovell v. Poway Unified Sch. Dist.*,
　90 F.3d 367 (9th Cir. 1996) ...............................................25, 26, 29

*Mattel, Inc. v. MGA Ent., Inc.*,
　705 F.3d 1108 (9th Cir. 2013) ..........................................................39

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*McCown v. City of Fontana,*
565 F.3d 1097 (9th Cir. 2009)...............................................56, 57

*McDonnell v. Miller Oil Co.,*
134 F.3d 638 (4th Cir. 1998)...........................................................56

*Miles v. California,*
320 F.3d 986 (9th Cir. 2003).........................................................25

*Narkiewicz-Laine v. Doyle,*
930 F.3d 897 (7th Cir. 2019)...........................................................47

*Nutrition Distrib. LLC v. IronMagLabs, LLC,*
978 F.3d 1068 (9th Cir. 2020).......................................................41

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
572 U.S. 545 (2014)........................................................................40

*Oracle Int'l Corp. v. Rimini St., Inc.,*
123 F.4th 986 (9th Cir. 2024)
..............................................1, 2, 9, 20, 28, 29, 32, 35, 36, 41

*Oracle USA, Inc. v. Rimini St., Inc.,*
81 F.4th 843 (9th Cir. 2023)..............................................6, 13, 50

*Oracle USA, Inc. v. Rimini St., Inc.,*
879 F.3d 948 (9th Cir. 2018)............................................................6

*Oracle USA, Inc. v. Rimini St., Inc.,*
Case No. 2:10-cv-0106 (D. Nev.).....................................................5

*Perfect 10, Inc. v. CCBill LLC,*
488 F.3d 1102 (9th Cir. 2007).........................................................51

*Perfect 10, Inc. v. Giganews, Inc.,*
847 F.3d 657 (9th Cir. 2017)...........................................................23

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union,*
65 F.4th 1012 (9th Cir. 2023).........................................................23

*Shame On You Prods., v. Banks.,*
893 F.3d 661 (9th Cir. 2018)...........................................................58

*Shelton v. Cnty. of San Bernadino,*
851 F. App'x 776 (9th Cir. 2021)...............................................25, 29

*Strike 3 Holdings, LLC v. Doe,*
2024 WL 4601590 (9th Cir. Oct. 29, 2024)...................................32

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016)............................................40, 42, 43

*Testa v. Village of Mundelein, Ill.*,
  89 F.3d 443 (7th Cir. 1996)..................................................32

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Musical
  Assoc.*,
  953 F.3d 638 (9th Cir. 2020)...................................................34, 49

*Turner v. McMahon*,
  830 F.2d 1003 (9th Cir. 1987)................................................25

*Unicom Sys., Inc. v. Farmers Grp., Inc.*,
  405 F. App'x 152 (9th Cir. 2010)............................................43

*United States v. $28,000.00 in U.S. Currency*,
  802 F.3d 1100 (9th Cir. 2015)...............................................53, 54

*Ward v. San Diego Cnty.*,
  791 F.2d 1329 (9th Cir. 1986)...............................................29

*Zenith Ins. Co. v. Breslaw*,
  108 F.3d 205 (9th Cir. 1997).................................................31, 48

## Statutes

17 U.S.C. § 505 ...........................................................24, 33

15 U.S.C. § 1117...........................................................24, 40

17 U.S.C. § 1203............................................................24, 43

## Other Authorities

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
  Practice & Procedure § 3915.6 (2d ed. 2024 update).......................26

## INTRODUCTION

This appeal presents an uncommonly clear case for reversal.  Rimini Street, Inc. and Seth Ravin ("Rimini") challenge the district court's award of $58 million in attorneys' fees and costs that is based on a copyright infringement judgment and injunction this Court subsequently reversed and vacated.  *See Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986 (9th Cir. 2024).  The undoing of a merits judgment requires reversal of a resulting fee award.  *See*, *e.g.*, *Hopkins v. City of Sierra Vista*, 931 F.2d 524, 529 (9th Cir. 1991) ("Because we reverse and remand for further proceedings on the merits, there is no prevailing party and we must also reverse the district court's award of attorneys' fees.").  Yet Oracle has refused to accept this fundamental principle—taking the extraordinary position that this Court's opinion had "*no impact* on the Fees Order."  2-ER-40 (emphasis added).

Even before this Court ruled in Rimini's favor on appeal, the district court's determination that Oracle was the prevailing party in this litigation and entitled to an award of over $58 million in attorneys' fees and costs was erroneous.  In addition to obtaining a declaratory judgment of non-infringement against Oracle, it was *Rimini* that prevailed in the district court on the vast majority of Oracle's claims— including *all* of its claims for more than $1.4 billion in damages, all of its infringement claims for three of the five Oracle product lines at issue, and significant parts of its infringement claims for the other two product lines.  The court ignored

these significant victories on Rimini's part—and rejected the obvious reality that this was (at best for Oracle) a mixed-result case in which neither party should be awarded fees—and deemed Oracle the prevailing party, largely because it obtained an injunction under the Copyright Act impacting Rimini's revised support processes for one of the five product lines it challenged (PeopleSoft).

Since then, this Court has completely undone this (already inadequate) foundation for the district court's massive fee award. Among other things, this Court rejected the erroneous "derivative works" definition on which nearly all of the (already limited) infringement findings were based and vacated the striking of Rimini's affirmative defense under 17 U.S.C. § 117(a) which (where applicable) serves as a complete defense to *any* claim of infringement, thereby negating the entire infringement judgment in the case. As a result, this Court also vacated *all* "portions of the injunction appealed by Rimini," including the entirety of the injunction issued under the Copyright Act. *Rimini*, 123 F.4th at 1003. And while the Copyright Act claims are the heart of this case (and the primary basis for the district court's award to Oracle), this Court also reversed liability and vacated corresponding injunctive relief on 11 of 15 statements Rimini made that the district court held violated the Lanham Act.

Following Rimini's successful appeal, Oracle has now prevailed on *none* of its copyright infringement claims or claims for damages, and established liability

2

only under the Lanham Act and the Digital Millennium Copyright Act ("DMCA") for which it obtained an injunction (no damages) regarding four statements and prohibiting Rimini (like anyone else) from violating the DMCA going forward. That is obviously inadequate to affirm the determination that Oracle prevailed in this litigation and the $58 million award, and so Rimini had hoped this Court could be spared from a *fifth* appeal in this long-running saga. *See* 2-ER-25–32. But Oracle refused to return the $58 million Rimini paid (subject to its appellate rights) or explain on what basis Oracle could possibly oppose vacatur and remand of the award (and the return of Rimini's funds) in light of this Court's reversal and vacatur of the underlying judgment and injunction. Rimini therefore asks this Court to reverse (or, at a minimum, vacate) the award for any and all of the following reasons.

*First*, now that the dust has settled from Rimini's appeal, it is exceptionally clear that Oracle is not the prevailing party and is not entitled to an award of the tens of millions of dollars it spent losing this case. After more than a decade of scorched-earth litigation, Oracle has obtained *nothing* under the Copyright Act or for its claims of over $1.4 billion in damages. The ancillary success Oracle obtained under the Lanham Act and the DMCA obviously does not make it the prevailing party in this "copyright action" (Oracle's words, 2-ER-36). At best, this is a mixed-result case in which the parties should bear their own fees and costs. Either way, this Court

3

should reverse the award and resolve for good that Oracle is not entitled to recover its fees and costs in this action.

*Second*, even before this Court's reversal and vacatur of the underlying judgment and injunction, the district court's award was erroneous on the record before it. Oracle sought over *$1.4 billion* in damages and sweeping injunctive relief in this case, pushing expansive theories of infringement that, if successful, would have eliminated Rimini's ability to compete with Oracle by supporting *any* of Oracle's product lines. But Oracle was not successful. The district court committed a host of reversible legal errors in nonetheless awarding fees to a party that *lost* the vast majority of its claims, further demonstrating that reversal is in order.

*Third*, even if *an* award of fees to Oracle is warranted (and it plainly is not), $58 million was dramatically excessive even on the record before Rimini's appeal, and is plainly so now. In declining to reduce the award to account for Oracle's already limited success and unreasonable billing practices, the district court again misapplied governing law, tasking Rimini with the burden of disproving Oracle's entitlement to recover fees. At the absolute minimum, this Court should vacate and remand the award with instruction to significantly reduce the award under the proper legal standard and in light of Oracle's now exceedingly limited success in this case.

The Court should reverse or (at a minimum) vacate the award.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 & 1332, and entered an order and final judgment awarding Oracle attorneys' fees and costs on September 23, 2024.  1-ER-2–22.  Rimini timely noticed its appeal on September 24, 2024.  This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

**I.**      Whether, following this Court's opinion reversing and vacating the underlying judgment and injunction, the award of $58 million in attorneys' fees and costs to Oracle must be reversed or vacated because Oracle is not the prevailing party and otherwise cannot satisfy the criteria necessary for a fee award.

**II.**      Whether, even on the record before the district court, the award should be reversed or vacated due to the court's series of legal errors.

**III.**      Whether the $58 million award should, at a minimum, be significantly reduced in light of Oracle's limited success in this case.

## CONSTITUTIONAL AND STATUTORY PROVISIONS

Pertinent constitutional and statutory provisions are reproduced in the addendum.  Cir. R. 28-2.7.

## STATEMENT OF THE CASE

Litigation between Oracle and Rimini began in 2010, when Oracle sued Rimini and its CEO (Mr. Ravin), alleging that Rimini's support processes for certain

Oracle product lines infringed Oracle's copyrights. *Oracle USA, Inc. v. Rimini St., Inc.*, Case No. 2:10-cv-0106 (D. Nev.) ("*Rimini I*"). Even though all of Rimini's clients held valid licenses that authorized them to hire Rimini to service their licensed Oracle software, the district court held on summary judgment in 2014 that certain aspects of Rimini's support processes exceeded the terms of those licenses and therefore infringed. *See Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 958–60 (9th Cir. 2018). At trial, the jury found that Rimini's infringement was "innocent"—meaning Rimini was not aware and had no reason to believe that its conduct exceeded the scope of Oracle's licenses.

Consistent with the district court's 2014 summary judgment rulings, Rimini fundamentally revised its support processes (*Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 849 (9th Cir. 2023); 4-ER-606:6–607:17, 610:2–9, 613:16–618:11, 578:2–579:10, 544:22–545:7, 548:1–549:11), which included developing its own software tools to automate aspects of its new support processes for PeopleSoft (2-ER-105; 4-ER-614:1–11, 606:15–19, 537:18–539:5; 5-ER-1023). Rimini then filed this lawsuit ("*Rimini II*"), seeking a declaratory judgment that its revised processes (referred to as "Process 2.0") and tools do not infringe Oracle's copyrights. 5-ER-1011–22. Oracle counterclaimed and, after multiple amendments to the pleadings, the case ultimately included (1) claims for infringement/non-infringement as to Rimini's support processes for five Oracle product lines; (2) Lanham Act claims by

6

both parties; (3) a DMCA claim by Oracle; and (4) a host of state-law claims (four by Rimini; six by Oracle). 5-ER-772–73; 9-ER-1843–1901; 9-ER-1902–53. In total, Oracle sought over $1.4 billion in damages. 8-ER-1690–91.

## I.  The Parties' Claims, Discovery, and the Mixed Results Following the Bench Trial.

Most of the parties' state law claims and Rimini's Lanham Act claim were dismissed on the pleadings or at summary judgment. *See* 5-ER-887; 5-ER-773, 861. The rest of Oracle's state law claims were voluntarily dismissed with prejudice shortly before trial (4-ER-623–24), and Rimini's remaining state law claim was rejected at trial (2-ER-235–44). The bench trial primarily concerned Rimini's declaratory judgment action seeking a determination that Process 2.0 did not infringe Oracle's copyrights and Oracle's parallel counterclaims of copyright infringement.

### A.  Oracle's Failed Damages Claims.

Throughout the entirety of the case, up until weeks before trial, Oracle sought and heavily litigated its claims for more than $1.4 billion in damages. It contended that essentially every Rimini client left Oracle and joined Rimini because of Rimini's alleged misconduct, and that, absent the alleged misconduct, they would have remained Oracle customers. 7-ER-1385. In support of its damages theory, Oracle subpoenaed more than 800 Rimini clients. 7-ER-1346 ¶ 3. And it told the court that it was doing so to prove "causation, reliance, or harm" for each client, stating that: "[i]n light of the [causation] arguments advanced by Rimini at [the *Rimini I*] trial,

Oracle intends to subpoena all or virtually all of the relevant Rimini customers." 5-ER-929; *see also* 5-ER-888–903.  Just two months before a jury trial was set to begin, Oracle supplemented its damages report to allege a total of more than $1.4 billion in damages.  7-ER-1350–79.

But mere weeks before trial, with no prior warning and shortly after ██████████████████████████ (7-ER-1341 ¶ 31), Oracle abandoned all of its damages claims and non-equitable claims with prejudice, pursuing only a bench trial on declaratory and injunctive relief.  4-ER-628–29.

## B.     Claims of Infringement/Non-Infringement.

Rimini provides support services for enterprise software, including a number of Oracle products.  The litigation concerned five: E-Business Suite ("EBS"), J.D. Edwards ("JDE"), Siebel, PeopleSoft, and Database.  The parties' allegations, evidence presented at trial, witnesses, and district court's holdings treated the five product lines separately.  *See, e.g.*, 7-ER-1346–48; 2-ER-72–126, 134–226.  But Oracle's product-specific infringement claims were built upon a trio of common, sweeping legal positions.

*First*, in July 2015, Oracle persuaded the district court to strike from the pleadings Rimini's defense to infringement under Section 117(a) of the Copyright Act.  *See* 5-ER-995–97.  That Section provides that copies of software (or adaptations thereto) made as an essential step in providing software support or for

archival purposes cannot constitute infringement. The district court agreed with Oracle that Rimini's clients (and Rimini in their stead), as *licensees* of Oracle software, could not invoke Section 117(a) as a defense, because they could not be considered the "owner of a copy" of Oracle software. 5-ER-995–97. As a result, Rimini was precluded from pursuing discovery on the defense and was not permitted to present it at trial, even though—where successful—it would have defeated any claim of infringement. *See Rimini*, 123 F.4th at 997 (noting that "no copyright infringement exists" where the defense applies).

*Second*, at summary judgment in September 2020, Oracle persuaded the district court to adopt a radical and novel definition of derivative works, whereby any Rimini-written update or file, even those that "contained only Rimini written expression" and no protected Oracle expression of any kind (literal or non-literal), was a derivative work of Oracle software simply if "it only interacts and is useable with [Oracle software] and it was designed using Oracle's utility tools software." 5-ER-821. Rimini opposed that definition—which would render *any* original software designed to interact with preexisting software an infringing derivative work—as contrary to the Copyright Act and all applicable precedent. 9-ER-1832–36. After the court adopted Oracle's proposed definition, Oracle successfully opposed Rimini's motion to certify the issue for interlocutory appeal. *See* 4-ER-761–65. And Oracle made its definition the cornerstone of its infringement claims at the bench

trial (*see*, *e.g.*, 3-ER-358–62, 366, 369, 371–72, 376–77, 384–90, 396–97, 457, 483–84, 491), including by having its key expert witness rely on the definition for the majority of Oracle's infringement theories (*see*, *e.g.*, 4-ER-599:11–600:1 (testifying that all "updates that Rimini develops" are derivative works because they "are modifications to" an Oracle product); 4-ER-601:15–25 (testifying that is so "even if they don't copy Oracle protected expression")).

*Third*, Oracle asserted a pair of sweeping theories of "cross-use"—a concept Oracle invented for purposes of this litigation and has been trying to expand for a decade. First, Oracle argued that if Rimini performed an update for a client using the client's software environment, wrote down its solution in a technical specification that did not contain any Oracle copyrighted expression, and then used that specification when performing the same or a similar update for another client that needed the update, that violated a license provision and constituted copyright infringement. 2-ER-86–87, 209–10.[1] Oracle took the position that Rimini engineers could not re-use their own know-how when supporting multiple clients, regardless of whether they copied Oracle expression. *Id.* Second, Oracle claimed that if Rimini tested an update for a client using that client's software, it could not use that

---

[1] Technical specifications are a "standard and accepted practice" in software support to document the steps an engineer took to effectuate a software update. 4-ER-556:16–557:24; 4-ER-591:2–592:11; 2-ER-86–87.

knowledge to perform less or no testing of a similar update for another client. 2-ER-103–05. Following the bench trial, the district court rejected both of these expansive positions on "cross-use." 2-ER-86–87, 103–05, 209–10.

Oracle's specific infringement claims for the five product lines at issue, each of which required substantial discovery specific to that line, are as follows:

**EBS.** EBS was the most litigated product line across the eight-year discovery and pretrial period. 7-ER-1347 ¶ 9. Oracle sought ███████ in EBS-related damages alone, and EBS was the subject of the most document requests. 7-ER-1347 ¶ 9; 7-ER-1350–79. Oracle issued 228 subpoenas to Rimini's EBS clients, and Rimini produced over *850,000 documents* from custodians that worked solely or primarily on EBS. 7-ER-1346–47 ¶¶ 3, 9. The only two Rimini clients who testified at trial were EBS clients. 7-ER-1347 ¶ 9. Oracle broadly alleged that every single Rimini-created EBS update that Rimini provided to more than one client (thousands in total) infringed. *E.g.*, 4-ER-587:15–588:8; 4-ER-534:7–18; 7-ER-1413–14; 7-ER-1394–96, 1401–03. Oracle also took positions that would essentially render lawful EBS support impossible, because it contended that its EBS licenses did not allow third-party providers to "copy" the EBS software *at all*, even though copying is inherent in *all* software use. 7-ER-1414–17; 2-ER-102 (district court recognizing "there is no way to use software without creating RAM copies").

11

Following the bench trial, the district court rejected all of Oracle's EBS claims and granted Rimini a declaration of non-infringement as to its EBS support processes. 2-ER-259. Oracle subsequently filed a motion asking the court to amend its judgment to rule that at least *some* aspects of Process 2.0 infringed Oracle's EBS copyrights, and to enjoin Rimini from using them. 2-ER-47–54. The court denied that motion, reaffirming "that Oracle has not met its burden to show that Rimini's EBS support processes infringe Oracle's pertinent copyrights," and that the "specific elements of Rimini's EBS support processes" Oracle highlighted were no exception. 2-ER-45.

**_JDE._** Oracle claimed ███████ in damages for JDE. 7-ER-1350–79. Oracle's expert claimed that every Rimini-created JDE update provided to more than one client (even if created separately in each client's environment) infringed. 7-ER-1357; 7-ER-1422–24; 7-ER-1394–96; 2-ER-136; 4-ER-587:15–588:8. Oracle subpoenaed 123 of Rimini's JDE clients. 7-ER-1346 ¶ 3. Oracle also claimed that lawful JDE support was effectively impossible for many clients due to restrictions in some legacy licenses on accessing "source code." 8-ER-1615–17.

Following the bench trial, the district court entered judgment for Rimini on Oracle's JDE infringement claims. 2-ER-256. It generally found that Rimini's JDE support processes were non-infringing, but held that three technical specifications contained snippets of Oracle code as "locators" (*e.g.*, references by name in an

12

Oracle file to where Rimini's new code should be inserted) that "Judge Hicks already found infringing in [*Rimini*] *I*," and on that basis denied Rimini's request for a declaration of non-infringement. 2-ER-210, 231, 256. One month later, however, this Court (in a post-judgment proceeding in *Rimini I*) reversed Judge Hicks' ruling and held that certain *de minimis* "snippets of Oracle source code" in a JDE technical specification did not violate the Copyright Act or the *Rimini I* injunction. *Rimini*, 81 F.4th at 855–58.

**Siebel.** Oracle alleged that Rimini's support processes for Siebel infringed and sought more than ███████ in damages. 7-ER-1350–79. Oracle issued 71 subpoenas to Rimini's Siebel clients, and Rimini produced more than 200,000 Siebel documents. 7-ER-1346–47 ¶¶ 3, 13. Throughout the entire case and continuing through the pretrial order and Oracle's updated damages report shortly before trial, Oracle steadfastly maintained its infringement allegations regarding Siebel. 4-ER-668–70; 7-ER-1350–79. But at trial, Oracle chose to present no evidence at all on Siebel and so failed to prove infringement. 7-ER-1348 ¶ 14; 2-ER-231.

**PeopleSoft.** Oracle alleged ███████ in damages related to PeopleSoft and subpoenaed 368 of Rimini's PeopleSoft clients. 7-ER-1346 ¶ 3; 7-ER-1350–79. Oracle alleged multiple infringement theories for PeopleSoft: (1) that all of Rimini's updates involving the use of technical specifications infringed for reasons similar to those alleged for EBS and JDE; (2) that Rimini's processes for testing

13

updates infringed; (3) that Rimini infringed by "migrating" its clients' PeopleSoft environments off of Rimini's systems and onto clients' systems (to comply with the district court's ruling interpreting PeopleSoft licenses to prohibit "local hosting"); (4) that Rimini's automated tools infringed; and (5) that specific Rimini "rewrite" files contained Oracle code. 7-ER-1503–06, 1519–23. The district court found for Rimini on Oracle's two broad theories (1 and 2 above) (2-ER-86–87, 103–05, 209–11), and for Oracle on the remaining PeopleSoft-specific issues. The court granted injunctive relief on those issues and denied injunctive relief on the issues Oracle lost. 2-ER-256–57; 2-ER-57–59.

***Database.*** Oracle alleged ███████ in damages for Database. 7-ER-1350–79. Oracle's Database allegations fell into three categories. First, Oracle alleged that Rimini's support processes for the Database software itself were infringing. *E.g.*, 9-ER-1862, 1864 ¶¶ 78, 90. Second, Oracle alleged that Rimini's hosting of 18 "gap customer" environments on its systems before switching to Process 2.0 in 2014 infringed. 2-ER-221. Third, Oracle alleged that because each of the EBS, JDE, Siebel, and PeopleSoft product lines require a database to run, if a client used one of the accused applications and also used Database, then any cross-use of the application would necessarily cause cross-use of Database. *Id.* Oracle conducted substantial discovery into Rimini's support processes for Database, subpoenaing 261 clients. 7-ER-1346 ¶ 3.

14

After fact discovery was completed, Oracle abandoned its claim that Rimini's Database support processes infringed; it pursued only its gap customer and "infringement-by-application" theories at trial. *Compare*, *e.g.*, 9-ER-1862, 1864 ¶¶ 78, 90 *with* 2-ER-220–21. Tracking its rulings on the applications themselves, the court found infringement as to Database clients that used PeopleSoft and no infringement as to clients that used EBS, JDE, or Siebel. 2-ER-225–26. The court did not award any injunctive relief as to Rimini's revised support processes for Database. *See* 2-ER-256.

## C. Oracle's Lanham Act Claims.

Oracle initially alleged that Rimini made 43 false statements in violation of the Lanham Act. 7-ER-1348 ¶¶ 16–17. By the time of trial, Oracle had abandoned all but 15 of them. 2-ER-138–39, 143–45, 155. Twelve of the 15 statements related to Rimini's security offerings (*e.g.*, "Rimini offers 'holistic security' solutions for enterprises"), which were wholly unrelated to any infringement allegations in the case; two related to Rimini's revised support processes compared to *Rimini I* processes; and one related to the similarity of Rimini and a company called TomorrowNow. 2-ER-59–60, 138–39, 143–45, 155. Oracle claimed that these statements caused almost every Rimini client to leave Oracle and go to Rimini for support. 7-ER-1347 ¶ 8; 7-ER-1385. The district court found that the statements violated the Lanham Act, granted injunctive relief, and did not reach the question of

15

causation or reliance because Oracle abandoned its damages claims.  *See* 2-ER-138–55, 244.

### D. Oracle's DMCA Claim.

Oracle's DMCA claim concerned approximately 20 "rewrite" files, all of which stemmed from a project at Rimini (long since abandoned) to improve the functionality of clients' fully licensed Oracle files by "rewrit[ing]" portions of them while retaining some of the original Oracle code.  *See* 4-ER-562:16–565:1, 568:4–20; 2-ER-88.  Oracle alleged that in creating these rewrite files, Rimini violated the DMCA by not retaining (or failing to insert) Oracle copyright notices into the files.  8-ER-1577–78.  Because clients' rewritten files were modified and re-copied over the years, Oracle claimed that those 20 files eventually resulted in 5,393 violations of the DMCA and sought ██████████ in statutory damages.  8-ER-1578; 7-ER-1410.

It was undisputed at trial that the files did not contain Oracle copyright notices; the crux of the parties' dispute was: (1) whether the DMCA is violated by *omitting* copyright notices from a significantly *modified* version of a copyrighted work, as opposed to a literal copy of a copyrighted work; (2) whether failure to *insert* a copyright notice into a file containing Oracle copyrighted expression could be a DMCA violation; and (3) whether each subsequent copy of a file amounted to a new "violation" for which statutory damages were available. 2-ER-226–29.  After Oracle

abandoned its claim for damages under the DMCA, the district court found Rimini liable under the DMCA and granted injunctive relief prohibiting Rimini from violating the DMCA going forward. 2-ER-59, 258.

## II. The District Court Awards Oracle $58 Million in Fees and Costs While the Appeal of the Judgment and Injunction Is Pending.

Rimini appealed the district court's judgment and injunction to this Court (9th Cir. Case No. 23-16038), challenging (1) all of the infringement liability and injunctive relief and (2) Lanham Act liability and injunctive relief as to 12 of the 15 statements found by the district court to be false or misleading. Rimini did not appeal the injunctive relief Oracle obtained under the DMCA, given that the injunction only required Rimini to comply with the DMCA going forward (as anyone must). Oracle did not cross-appeal any of the claims it lost. This Court *sua sponte* expedited Rimini's appeal. 9th Cir. Case No. 23-16038, ECF No. 12.

On November 6, 2023, despite having abandoned all of its damages claims and obtaining only partial injunctive relief regarding Rimini's revised support processes for only one of the five product lines at issue—and with Rimini's expedited appeal of Oracle's limited successes pending in this Court—Oracle moved to recover over $68 million in attorneys' fees and costs under the Copyright Act, Lanham Act, and DMCA as the supposedly prevailing party in this litigation. 7-ER-1456–87. In its request, Oracle included fees and costs it incurred litigating its abandoned damages claims and the product lines on which Rimini prevailed.

17

Rimini opposed Oracle's request, arguing that (1) this was a quintessential mixed-results case in which courts routinely require each party to bear its own fees and costs; (2) even if Oracle could be considered the prevailing party, the factors and requirements governing whether to award fees under the relevant statutes did not support an award; and (3) even if some fees should be awarded, no more than $14.47 million was permissible in light of Oracle's limited success and its inaccurate and unreasonable billing records. 7-ER-1425–55. In the alternative, given that the already limited success Oracle obtained was on appeal to this Court and might be reversed and/or vacated, Rimini requested that any decision on fees be deferred until after this Court's forthcoming ruling, to avoid having to burden the courts with relitigating the fees issue. 7-ER-1432. Oracle did not consent to that request.

On September 23, 2024, more than three months after Rimini's appeal of the judgment and injunction had been fully briefed, argued, and submitted, the district court awarded Oracle $58,512,498.70 in attorneys' fees and costs. 1-ER-2–22. The court did not address Rimini's request to defer a ruling until after Rimini's appeal.

*First*, the district court held that Oracle was the prevailing party even though it abandoned all of its damages claims and lost its infringement claims as to most of the product lines at issue. The court held that Oracle nonetheless "substantially prevailed" on infringement because "much of the trial—and the Court's corresponding findings in the Bench Order—was focused on Oracle's copyright

18

infringement claims regarding the PeopleSoft product," for which Oracle obtained partial injunctive relief. 1-ER-5. The court also noted that Oracle obtained injunctive relief on 15 statements under the Lanham Act, and on its DMCA claim.

*Second*, the court held that the factors described in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994), and other authorities governing whether to award fees under the Copyright Act supported Oracle's request. 1-ER-6–11.

*Third*, the court held that this was an "exceptional case" warranting fees under the Lanham Act given the court's finding that "Rimini knew [the statements] were false and misleading" when it made them. 1-ER-11–12.

*Fourth*, the court declined to award a small subset of Oracle's requested fees that were "closely associated with preparation for the jury trial that Oracle decided to forgo," and an "additional approximately $30,000 for billing entries documenting administrative tasks billed hourly," but otherwise awarded Oracle all of the fees it requested. 1-ER-12–13. In doing so, the court rejected Rimini's arguments against awarding fees and costs for the myriad claims Oracle lost. 1-ER-12–19.

Rimini timely appealed the judgment awarding Oracle attorneys' fees and costs. 5-ER-1040–45.

## III. This Court Reverses and Vacates the Merits Judgment and Injunction.

On December 16, 2024, this Court reversed and vacated the judgment and injunction on which the fee and costs award is based. *See Rimini*, 123 F.4th 986.

19

The Court vacated *all* of the district court's judgment of infringement and corresponding injunctive relief in light of several, independent legal errors. The Court held that the district court erred in: (1) adopting Oracle's over-expansive definition of derivative works, which it used to label Rimini's PeopleSoft files, updates, and tools infringing; (2) striking Rimini's Section 117 defense on the pleadings, precluding Rimini from asserting the defense to any specific claims of infringement; (3) ruling that the 18 "gap customer" environments containing Database were infringing; and (4) ruling that Rimini's automated tools and "outright delivery" of PeopleSoft updates to clients without further testing in the clients' environments resulted in impermissible cross-use, because there was no evidence that copies of Oracle software were made in one clients' environment "solely" to benefit other clients. *Id.* at 994–1000. The Court also reversed liability and injunctive relief on 11 of the 12 statements found to violate the Lanham Act that Rimini appealed, holding that the statements were nonactionable statements of opinion and puffery. *Id.* at 1000–03. Because the Court "vacate[d] much of the district court's ruling," it also vacated *all* "portions of the injunction appealed by Rimini." *Id.* at 1003.[2]

---

[2] Oracle's rehearing petition was denied on February 25, 2025. 9th Cir. Case No. 23-16038, ECF No. 59.

Four days after this Court's undoing of the merits judgment and injunction, Rimini asked Oracle to agree to "summary vacatur of the fee award so that the district court can consider the issue of fees anew after another judgment is issued on the merits." 2-ER-27–28. Oracle refused, and more than two months later, filed in the district court a motion "for an indicative ruling under [Federal Rule of Civil Procedure] Rule 62.1" "as to how the Fees Appeal should proceed in light of the December 16, 2024 Merits Opinion[.]" 2-ER-36, 39–40. That motion remains pending.[3]

## SUMMARY OF THE ARGUMENT

**I.** With this Court having reversed and vacated nearly everything in the merits judgment and injunction on which the district court's fees and costs award is based, it is elementary that the award must also be reversed or, at a minimum, vacated. Oracle obviously can no longer be considered the prevailing party in this case. Either

---

[3] Oracle argues in this motion that this Court's reversal and vacatur has "no impact" on the award, yet sought a Rule 62.1 "indicative ruling." 2-ER-40. Oracle cannot have its cake and eat it, too. If Oracle wanted the district court to re-assess the award in light of the merits appeal, then Oracle should have agreed to vacatur as Rimini proposed. If Oracle wanted to stand on the award, the proper approach is to see this appeal through. Having refused to agree to vacatur, Oracle should be required to litigate this appeal. Oracle's motion is, in all events, untenable on its face and seeks an unconstitutional advisory opinion. Oracle did not seek any relief in its Rule 62.1 motion, and does not seek to alter, modify, vacate, or otherwise change the award. Rather, it asks the district court—which concededly lacks jurisdiction—to speculate about what it would do given this Court's merits opinion. That would violate Article III's ban on advisory opinions. *See Hayburn's Case*, 2 Dall. 409 (1792).

Rimini prevailed or (at best) it is a mixed decision where both parties should bear their own fees and costs. And regardless of who is deemed the prevailing party, the fee-shifting statutes on which the court relied plainly do not support an award to Oracle. *All* of the (already very limited) copyright infringement judgment Oracle obtained from the district court has been wiped away by this Court. The reversal on 11 of the 15 statements found to be false or misleading likewise confirms that a fee award is unavailable under the Lanham Act. And Oracle's hollow victory under the DMCA does not support an award under that statute in this massive litigation in which the DMCA claim was ancillary at best.

**II.** For multiple, independent reasons, the district court's award to Oracle was also wrong when it was issued. For example, the court said that Oracle *alone* (due to the now-vacated injunction under the Copyright Act) effected a "material alteration" "in the legal relationship" between the parties, ignoring that Rimini won a declaratory judgment of non-infringement *and* claim-preclusive judgments on the vast majority of Oracle's claims. Accordingly, even on the record before the district court, without considering this Court's reversal and vacatur, the award should be reversed.

**III.** Even if this Court is disinclined to reverse or vacate the award in full, the amount awarded ($58 million) is improper given Oracle's limited (and now nearly nonexistent) "success." In declining to reduce the award to account for Oracle's

limited success before the district court and its unreasonable billing practices, the district court improperly tasked Rimini with disproving Oracle's right to recover any fees and costs it incurred, rather than holding Oracle to its burden to prove its right to any (let alone virtually all) of those fees and costs.

## STANDARD OF REVIEW

Whether a party is the prevailing party eligible for an award of attorneys' fees and costs under these statutes is a "legal question subject to *de novo* review." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1033 n.11 (9th Cir. 2023). This Court reviews "a district court's decision to grant or deny attorney's fees" under a statutory fee-shifting provision "for abuse of discretion, but any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable *de novo*." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 665 (9th Cir. 2017); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 614–15 (9th Cir. 2010).

## ARGUMENT

## I. This Court's Decision Vacating the Injunction Requires Reversal or Vacatur of the Fee and Costs Award.

The foundation of the district court's fee and costs award was that Oracle had prevailed in the litigation by securing the injunction, especially the portions regarding Rimini's infringement of Oracle's PeopleSoft copyrights. Now that this Court has vacated that injunction, the award must be reversed as well. If there is a

23

prevailing party in this case, it is Rimini.  At worst, the Court could conclude that this is a mixed-results case meriting no fees or costs.  But in no world can Oracle be deemed the prevailing party now that the only significant success it obtained in the litigation has been wiped away.

### A. Oracle Cannot Be the Prevailing Party Now That the Court Has Vacated the Injunction.

The Copyright Act and the DMCA allow courts to "award a reasonable attorney's fee" only "to the prevailing party" in a case.  17 U.S.C. § 505; 17 U.S.C. § 1203(b)(5) (similar).  Likewise, the Lanham Act allows fees to be awarded only "to the prevailing party," although only "in exceptional cases."  15 U.S.C. § 1117.

As the Supreme Court reaffirmed just a few weeks ago, the prevailing party in a case is "the party who successfully prosecutes the action or successfully defends against it."  *Lackey v. Stinnie*, 604 U.S. ---, 2025 WL 594737, at *4 (Feb. 25, 2025) (quotation marks omitted).  "[P]revailing party status does not depend upon the degree of success at different stages of the suit"; rather, the prevailing party is the party "ultimately prevailing when the matter is finally set at rest."  *Id.*[4]

---

[4] The "prevailing party" analysis for costs under Rule 54(d) is the same as for fee-shifting statutes (*see Miles v. California*, 320 F.3d 986, 989 (9th Cir. 2003)), and thus the district court's award of costs falls with its award of fees.

Naturally, when this Court reverses or vacates a merits judgment, the party awarded fees and costs by the district court "can no longer be considered a prevailing party," and the award can no longer stand. *Lovell by and Through Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 373 (9th Cir. 1996); *Turner v. McMahon*, 830 F.2d 1003, 1009 (9th Cir. 1987) ("We have concluded that the judgment on the merits must be reversed. Appellees are no longer a 'prevailing party.' Accordingly, the award of attorney's fees must be vacated."); *Shelton v. Cnty. of San Bernadino*, 851 F. App'x 776, 777 (9th Cir. 2021) (affirming in part, reversing in part, vacating in part, and remanding merits judgment, and vacating "district court's award of costs" because "Defendants are no longer the prevailing party"); *Dep't of Educ., State of Hawaii v. Rodarte*, 127 F. Supp. 2d 1103, 1115 (D. Haw. 2000) (recognizing "general rule" of this Circuit "that attorneys' fees awarded for victory on the merits must be returned if a recipient loses on the merits on appeal"). The reason for this rule is obvious: "[t]he decision of the appeal on the merits may undo the assumptions on which the fee award was made." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3915.6 (2d ed. 2024 update).

For example, in *Lovell*, a student brought First Amendment and due process claims against her school district. The district court rejected her due process claim, but found that the defendants violated her First Amendment rights. "Because she prevailed on one of her claims, the district court awarded her partial attorney's fees

25

under 42 U.S.C. § 1988." *Lovell*, 90 F.3d at 368. The school district appealed, and the student brought a cross-appeal on the due process claim. *Id.* On appeal, this Court ruled in favor of the school district on both the First Amendment and due process claims. *Id.* at 370–73. And because of the reversal on the merits, the student was "no longer … a prevailing party," so "the award of attorney's fees [was] vacated." *Id.* at 373–74.

Similarly, just a few months ago, this Court reversed an award of fees to defendants in a suit shortly after it issued a merits ruling affirming some of their successes, but vacating and remanding on others. *See H&H Pharms., LLC v. Chattem Chems., Inc.*, 2024 WL 4523807, at *1–2 (9th Cir. Oct. 18, 2024). While the defendants argued that the lack of a complete reversal meant they should still be "entitled to their attorneys' fees and costs," this Court summarily rejected that claim. Reversal and remand meant "there is no prevailing party and we must also reverse the district court's award of attorneys' fees." *Id.* at *1 (quoting *Hopkins*, 931 F.2d at 529). "This is so even though we reversed only in part." *Id.* (citing *Long v. Coast Resorts, Inc.*, 267 F.3d 918, 925 (9th Cir. 2001)).

This case presents an obvious case for reversal of the award, given that the now-vacated injunction is the only relief Oracle obtained from the district court and was the basis the court cited for deeming Oracle the prevailing party. In deciding Oracle's "entitlement to fees," the court gave short shrift to the fact that Oracle lost

the bulk of its claims before it, including all of its claims for more than $1.4 billion in damages. 1-ER-4–6. Instead, the court deemed Oracle the prevailing party "most significantly" because of its decision "to issue the Injunction." 1-ER-4. The infringement portion of the injunction, the court ruled, "reflect[ed] a significant victory on Oracle's part even though Oracle dropped its damages claim because, if it goes into effect, it will force Rimini to significantly change its PeopleSoft software support business," potentially even bringing "an end to an entire business line" for Rimini. 1-ER-7–8 (footnote omitted); *see also* 1-ER-4–5 (also noting that the injunction "constrains what Rimini can do, say about Oracle, and requires Rimini to issue a corrective press release"). This, the court insisted, rendered Oracle the prevailing party, because it "reflects that Oracle obtained a material alteration of the relationship between Oracle and Rimini." 1-ER-4–5.

The foundation of the district court's fee ruling has been demolished by this Court's intervening merits decision. Nearly all of the PeopleSoft infringement liability hinged on the district court's definition of "derivative works." This Court vacated and remanded the judgment because that definition of derivative works was legally erroneous, and because Rimini was prevented from asserting an affirmative defense to any alleged infringement under Section 117(a) of the Copyright Act. *See Rimini*, 123 F.4th at 996 ("The district court erred by concluding that Rimini created infringing 'derivative works' just because its programs 'only interact[ ] and [are]

27

useable with' Oracle software."); *id.* at 999 ("vacat[ing] the district court's ruling on the 'automated tools' to the extent that its conclusion rests on its erroneous view of 'derivative work'"); *id.* at 999–1000 (vacating the district court's ruling regarding "outright delivery" of updates for the same reason); *id.* at 998 ("vacat[ing] the district court's ruling striking Rimini's § 117(a) affirmative defense and remand[ing] for reconsideration under this opinion"). And because this Court "vacate[d] the district court's ruling on 'derivative works' and the § 117(a) affirmative defense," it "also vacat[ed] the portions of the injunction appealed by Rimini" (*id.* at 1003), which included *all* portions of the injunction dealing with infringement (Case No. 23-16038, Rimini Op. Br., ECF No. 13-2 at 54–59).

Put simply, this Court wiped away all of the relief Oracle obtained as to Rimini's revised PeopleSoft support processes, which was the "significant victory" on which the district court tethered its award of fees and costs. 1-ER-7–8. Having now failed to obtain *any* judgment of infringement (let alone corresponding injunctive relief), in what was, Oracle agrees (2-ER-36), a copyright dispute, Oracle cannot conceivably be called the "prevailing party" here.

The same goes for the ancillary Lanham Act relief Oracle obtained. The appeal concerned 12 statements the district court found to be false or misleading and enjoined Rimini from making in the future (while also ordering it to issue a corrective press release). *Rimini*, 123 F.4th at 1002–03. This Court "revers[ed] the

district court's" liability "ruling" on *11* of the 12 statements, and "vacate[d] the injunction as it pertains to these nonactionable statements." *Id.* With virtually all of the Lanham Act success Oracle achieved before the district court likewise wiped away on appeal, the court's determination that Oracle was the prevailing party in this massive litigation is further degraded. Because this Court "reverse[d] the [underlying] judgment … on the merits, [Oracle] can no longer be considered a prevailing party." *Lovell*, 90 F.3d at 373; *see also*, *e.g.*, *Shelton*, 851 F. App'x at 777 (appellee is "no longer the prevailing party" after partial affirmance, reversal, and vacatur); *Ward v. San Diego Cnty.*, 791 F.2d 1329, 1334 (9th Cir. 1986) ("An erroneously granted injunction cannot be the basis for an award of attorney fees.").

In light of this Court's decision reversing and vacating the judgment and injunction, it is now clear that either: (1) *Rimini* is the prevailing party or (2) this is a mixed-results case in which neither party should be awarded fees. Under either scenario, the award to Oracle must be reversed.

**1.** The case for holding Rimini the prevailing party is clear. Oracle went for the jugular in this litigation, attacking nearly every aspect of Rimini's business, alleging widespread, systemic infringement in Rimini's revised support processes across five Oracle product lines, all in the hope of eliminating Oracle's primary competitor in the market for support of Oracle software. After more than a decade of litigating this case (and spending more than $68 million on lawyers), Oracle has

29

now ended up with essentially nothing: (1) injunctive relief regarding four statements found to violate the Lanham Act and (2) an injunction ordering Rimini not to violate the DMCA, which is the same legal duty anyone has.

Rimini, on the other hand, has obtained a significant number of "material alteration[s]" or "change[s] [in] the legal relationship" with Oracle as a result of this suit. *Cadkin v. Loose*, 569 F.3d 1142, 1148 (9th Cir. 2009). At trial, Rimini won a declaratory judgment that its revised EBS support processes—the most litigated product line in discovery and the basis for over ███████ of Oracle's alleged damages (7-ER-1347 ¶ 9; 7-ER-1350–79)—do not infringe Oracle's copyrights. 2-ER-259. When Oracle sought to amend the judgment to hold that discrete portions of Rimini's revised EBS support processes infringed (2-ER-47–54), Rimini defeated that effort as well (2-ER-45–46). In addition to rejecting Oracle's claims of infringement as to EBS, the district court also ruled against Oracle on all of its JDE claims. 2-ER-256. And given that Oracle failed to present evidence on its Siebel claims at trial, it lost those as well. 2-ER-231. The district court also rejected significant portions of Oracle's claims regarding PeopleSoft and Database. *See*, *e.g.*, 2-ER-86–87, 103–05, 209–10.

Oracle also abandoned (after eight years of litigation and on the eve of trial) a host of other claims that were dismissed by the court with prejudice—each of which are also material alterations in the parties' relationship that favor Rimini as the

prevailing party in this suit. They include *all* of Oracle's claims for more than a billion dollars in damages—based on alleged infringement on all product lines, the DMCA, the Lanham Act, and Oracle's state-law claims. 4-ER-628–30; *see Zenith Ins. Co. v. Breslaw*, 108 F.3d 205, 207 (9th Cir. 1997) (voluntary dismissal of claims before trial is "sufficient to confer prevailing party status on the … defendants for those claims" because "a dismissal with prejudice is tantamount to a judgment on the merits"), *abrogated on other grounds by AMAE v. California*, 231 F.3d 572 (9th Cir. 2000). Oracle also abandoned (and thus lost) all of its state law claims at the same time (apart from those that had already been dismissed on the pleadings). *See* 5-ER-773; 4-ER-623–24. And Oracle abandoned the bulk of the 43 Lanham Act violations it originally alleged, attempting to prove only 15 at trial. *See* 7-ER-1348 ¶¶ 16–17 (initially alleging 43 false statements); 2-ER-138–39, 143–45, 155 (15 statements found false).

This Court's decision reversing and vacating the judgment and injunction are the final nail in the coffin. *All* of the already limited infringement injunctive relief and infringement judgment Oracle had obtained has been vacated. *See Rimini*, 123 F.4th at 998 (vacating Database infringement findings); *id.* at 998–1000, 1003 (vacating PeopleSoft infringement findings and injunctive relief). And perhaps most importantly, Rimini won a critical ruling from this Court rejecting Oracle's expansive definition of a derivative work, thereby permitting Rimini to create

updates that interoperate only with Oracle software but do not contain protected Oracle expression over Oracle's baseless claims of infringement. *Id.* at 994–97.

On this record, it is clear that if either party is the "prevailing part[y] in the overall action," it is Rimini, not Oracle. *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996).

**2.** The only other conceivable outcome is that the above tallying reflects a "mixed judgment" case in which each side should simply be ordered to pay its own fees and costs. *Amarel*, 102 F.3d at 1523 (in mixed result case, no one is the "prevailing part[y] in the overall action" and "each party [is] to bear its own costs" (citing *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996))); *see, e.g.*, *Kiewit Power Constructors Co. v. City of L.A.*, 813 F. App'x 261, 266 (9th Cir. 2020) (affirming denial of costs in mixed-judgment case); *Klune v. Palo Verde Health Care Dist.*, 761 F. App'x 751, 756 (9th Cir. 2019) (same); *Strike 3 Holdings, LLC v. Doe*, 2024 WL 4601590, at *2 (9th Cir. Oct. 29, 2024) (Ikuta, J., concurring) ("If both parties are prevailing, then no fees to either would be warranted. Words have meaning, and a party is 'prevailing' only where it comes out on top."); *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 907 (8th Cir. 2016) ("Where the parties achieve a dead heat, we don't see how either can be declared the 'prevailing party.'").

Oracle cannot be deemed the prevailing party for succeeding on four statements under the Lanham Act and obtaining an injunction needlessly ordering Rimini to comply with the DMCA, especially in the face of losing essentially every other aspect of this complicated, decade-long case.

### B. Regardless of Which Party Is Deemed "Prevailing," No Fee Award to Oracle Is Appropriate Under the Applicable Statutes.

The relevant fee-shifting statutes do not support an award of fees to Oracle, especially in light of this Court's reversal and vacatur of the merits judgment and injunction.

#### 1. The Copyright Act.

Section 505 of the Copyright Act allows, but does not require, an award of attorneys' fees to "the prevailing party on a copyright infringement claim." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1219 (9th Cir. 2008); *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020) ("Under § 505, an award of attorney's fees to a prevailing party is not automatic and instead lies within the discretion of the court.").

The Supreme Court has "established several principles and criteria to guide" courts in deciding whether an award of fees to the prevailing party is appropriate under the Copyright Act. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). These include factors such as "the degree of success obtained, frivolousness, motivation, objective reasonableness of the losing party's legal and factual

arguments, and the need to advance considerations of compensation and deterrence." *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Musical Assoc.*, 953 F.3d 638, 653 (9th Cir. 2020) (cleaned up). But the "pivotal criterion" in each case is whether awarding or denying fees would further "the purposes of the Copyright Act." *Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002).

With *all* of the already limited infringement success Oracle previously obtained having been eviscerated on appeal, the Copyright Act does not support an award of fees to Oracle in this case.

***Degree of Success Obtained.*** The Supreme Court has characterized the "degree of success obtained" as "the most critical factor" in assessing fees, and it "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claim for relief." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 436 (1983). Now that this Court has vacated all of the (already) limited success Oracle obtained as to Database and PeopleSoft, this most critical factor disfavors any award of fees to Oracle. Oracle has *no* success under the Copyright Act, and the district court's fee award cannot therefore be affirmed on that basis.

***Reasonableness of the Parties' Positions.*** There is also no basis to conclude that Rimini took unreasonable positions under the Copyright Act in this case. To the contrary, *Oracle* took unreasonable positions throughout this litigation. Even before Rimini's successful appeal, the district court "agree[d] with Rimini's

arguments for the most part" that Oracle "took some unreasonable positions, most notably not dropping its damages claim until right before trial[.]" 1-ER-8. But the unreasonable positions taken by Oracle are far more extensive, including:

- Oracle argued that Rimini violated Database licenses and therefore infringed by previously maintaining 18 clients' copies of Database on Rimini's computers. This Court ruled unanimously on August 24, 2023, in a *Rimini I* appeal, that "the plain language of the Oracle Database licensing agreement did not prohibit third-party support providers, like Rimini, from possessing a copy of Oracle's software" on its systems, and that "Oracle could not point to any location restriction in the Oracle Database licensing agreement" to support its contrary position. *Rimini*, 123 F.4th at 998 (cleaned up). But Oracle *continued* pressing the same argument, resulting in this Court again unanimously rejecting it on December 16, 2024. *Id.*

- Oracle took the position that *any* update to its software was an infringing derivative work—even if it contained no protected Oracle expression (literal or non-literal) of any kind—if the update only interacted with and was useable with Oracle software. Every amicus to weigh in opposed Oracle's expansive view (9th Cir. Case No. 23-16038, ECF Nos. 20, 23), and this Court unanimously rejected this

35

"'interoperability' test for derivative works" as supported by "neither the text of the Copyright Act nor [Ninth Circuit] precedent" (*Rimini*, 123 F.4th at 994).

- Oracle took the position that any copyright holder can defeat any Section 117(a) affirmative defense simply by labeling its agreements with customers "a 'license.'" *Rimini*, 123 F.4th at 997–98. Again, this Court unanimously rejected Oracle's position. *Id.*

- Oracle took a series of unreasonable (indeed, truly absurd) positions, each of which were rejected by the district court, that Rimini engineers could not re-use their *own* know-how when supporting multiple clients (2-ER-86–87, 209–11)—a baseless concept intended to render support of multiple clients by Oracle competitors effectively impossible.

- Oracle took the position (rejected by the district court) that its EBS licenses do not allow third-party providers to "copy" EBS software under any circumstances, even though *any use* of software necessarily creates a copy of the software, meaning that third-party providers essentially could not support EBS. *See* 7-ER-1347 ¶ 9; 7-ER-1414–17.

- Oracle took the position (again, rejected by the district court) that lawful JDE support was effectively impossible for many clients due to

36

restrictions in some legacy licenses on accessing "source code." 8-ER-1615–17.

- Oracle sought more than ████████ in damages related to Siebel (7-ER-1350–79), conducted extensive discovery on it (7-ER-1346–47 ¶¶ 3, 13), pressed infringement claims for eight years, including up through the Pretrial Order (4-ER-669), and then, at trial, without warning, chose not to introduce *any* evidence about it (7-ER-1348 ¶ 14; 2-ER-231).

***Need for Compensation.*** The district court correctly recognized that an award was not necessary for Oracle to be "made whole" (1-ER-9; *Fogerty*, 510 U.S. at 525) because any infringement could have been addressed via damages, which Oracle voluntarily abandoned. And now that Oracle has not even obtained a judgment regarding any infringement, there is obviously no need for it to be compensated by an award of fees.

***Need for Deterrence.*** Given that Rimini is the only party that has won favorable judgments on infringement claims in this case, the only legitimate deterrence that could possibly be served by a fee award would be an award of fees to *Rimini* deterring Oracle from continuing to litigate unsuccessful (and unreasonable) claims of infringement in the future.

***Purposes of the Copyright Act.*** Similarly, an award to Oracle would undermine, not promote, the purposes of the Copyright Act. Rimini prevailed on a host of defenses to Oracle's infringement claims, every one of which "furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014). Especially now that Oracle has *nothing* to show for its decade-plus pursuit of its infringement claims, the district court's award has the perverse effect of *discouraging* Rimini, and other defendants, from litigating meritorious defenses, and *encouraging* Oracle, and other plaintiffs, from litigating meritless claims.

Oracle alleged that nearly every Rimini update for five product lines infringed Oracle's copyrights, argued that any Rimini-written update (regardless of its content) merely designed to interoperate with Oracle software was a derivative work, and sought extensive damages. It claimed at trial that third-party support for EBS was impossible because third-party providers have the right to "use" the software but not "copy" it (4-ER-582:9–18)—a position that, if adopted, would have eliminated the third-party support industry and much of the consulting industry. 4-ER-552:16–553:25. Rimini defeating those claims (among others) promoted the purposes of copyright. Given the sheer breadth of Oracle's infringement theories, a "failure to vigorously defend against [them] could have ushered in a new era of copyright litigation aimed not at promoting expression but at stifling the

38

'competition' upon which America thrives." *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

Rimini's appellate victory on derivative works, in and of itself, served vital interests under the Copyright Act. This Court recognized more than 30 years ago in *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 964 F.2d 965 (9th Cir. 1992) just how disastrous for copyright it would be if works were held to be derivative merely because of interoperability, as opposed to actual incorporation of protected material. Numerous amici, including non-profits, professors, and trade organizations, weighed in on the parties' derivative works dispute on appeal, and uniformly warned about the dramatic effects Oracle's position would have on the software industry if adopted. *See* 9th Cir. Case No. 23-16038, ECF Nos. 20, 23.

All of the relevant factors weigh decisively against an award to Oracle.

## 2. The Lanham Act.

There also is no basis for an award under the Lanham Act. That statute permits an award of fees only in "exceptional cases." 15 U.S.C. § 1117. The Supreme Court has instructed courts to consider "the totality of the circumstances" in assessing whether a case is "exceptional," employing "the nonexclusive factors identified in *Octane Fitness* and *Fogerty*." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (first citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), then citing *Fogerty*, 510 U.S. at

534). The party seeking fees bears the burden of proving a case is exceptional, and must do so by a preponderance of the evidence. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023).

Under this framework, an award of fees to a prevailing party is "'uncommon,' 'rare,' or 'not ordinary.'" *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1278 (9th Cir. 2024) (quoting *Octane Fitness*, 572 U.S. at 553–54). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

Oracle cannot prove there is anything exceptional about this case. This Court's reversal on 11 of the 15 Lanham Act violations makes that clear. Rimini has now *prevailed* on 39 of the 43 statements that Oracle alleged to have violated the statute. *See* 7-ER-1348 ¶¶ 16–17; *Rimini*, 123 F.4th at 1000–03. Rimini also prevailed on *all* of Oracle's claims for damages (even as to the four statements found to violate the Lanham Act), with Oracle abandoning those claims after Rimini pressed its arguments that Oracle could not prove causation or damages. *See Nutrition Distrib. LLC v. IronMagLabs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020) (affirming denial of fee award where prevailing party "failed to show injury or damage resulting from [false] advertising"). This Court recognized on appeal, for example, that "Oracle could not identify any customers that left Oracle and went to

40

Rimini because of a statement about security," or "present any evidence of a security breach suffered by a Rimini client." *Rimini*, 123 F.4th at 1003.

At a minimum, reversal on the vast majority of the Lanham Act claims tried warrants vacatur of the award. When appellate courts reverse, vacate, and/or remand on the merits of a Lanham Act issue, they routinely vacate the corresponding Lanham Act attorneys' fees awards. *See*, *e.g.*, *Harbor Breeze Corp. v. Newport Landing Sportsfishing, Inc.*, 28 F.4th 35, 41 (9th Cir. 2022) (vacating fee award when new trial was required on Lanham Act claims); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1012 (2d Cir. 1995) (because court reversed Lanham Act liability, it "vacat[ed] the [fees] award" under the "Lanham Act"). The Court should do the same here.

Vacatur (at a minimum) is independently warranted because the district court erred in the standard it applied under the Lanham Act to award fees. Specifically, it held this case exceptional solely because it found that Rimini "willfully made the false statements included in the Injunction" (1-ER-11–12), erroneously fashioning a *per se* test for exceptionality out of an altered version of this Court's footnote in *Jason Scott*, 68 F.4th at 1223 n.13.

This is how the district court quoted *Jason Scott*: "because the standard imposed by *SunEarth* 'is less stringent than the previous willful infringement standard, it stands to reason that **[a]** case of willful infringement would satisfy the

41

*SunEarth* test.'" 1-ER-11 (quoting *Jason Scott*, 68 F.4th at 1223 n.13) (emphasis added; change of "this case" to "[a] case" in original). The court reiterated this *per se* interpretation in a parenthetical citation to the same footnote, summarizing this Court as follows: "(stating willful infringement would satisfy the *SunEarth* test)." 1-ER-12. Leaving no doubt as to the standard it endorsed, the district court concluded: "In sum, the Lanham Act portion of this case was exceptional **because of Rimini's willful violations of the Lanham Act**. Oracle is accordingly entitled to its fees as to its Lanham Act claims." 1-ER-12 (citing *Jason Scott*, 68 F.4th at 1223 n.13) (emphasis added).

But *Jason Scott* did not create a *per se* exceptionality test. Removing the district court's alteration of this Court's footnote demonstrates that. *Jason Scott* stated that "it stands to reason that **this** case of willful infringement would satisfy the *SunEarth* test." *Jason Scott*, 68 F.4th at 1223 n.13 (emphasis added). That one word makes all the difference—not just *any* case of willful infringement supports an award for fees under the Lanham Act. Rather, a case must be exceptional under the totality of the circumstances, including with respect "to the substantive strength of a party's litigation position." *SunEarth* 839 F.3d at 1180.

In relying solely on willfulness, the district court failed to consider the totality of the circumstances here, including: (1) that Oracle abandoned its request for Lanham Act damages, (2) that Rimini presented reasonable arguments on questions

of law (as proved by this Court's endorsement of Rimini's arguments in the merits reversal), (3) that substantial evidence at trial showed that the challenged statements were not false, and (4) that Rimini's own Lanham Act claims were reasonable. The district court thereby abused its discretion, and its award should be reversed.

### 3. The DMCA.

Like the Copyright Act, the DMCA allows courts to "award reasonable attorney's fees to the prevailing party." 17 U.S.C. § 1203(b)(5). Courts generally consider the same factors that dictate whether to award fees under the Copyright Act. *See*, *e.g.*, *Unicom Sys., Inc. v. Farmers Grp., Inc.*, 405 F. App'x 152, 155 (9th Cir. 2010) (affirming order denying fees under the DMCA based on "factors laid out by the Supreme Court" regarding whether "a fee award was appropriate under the Copyright Act" (citing *Fogerty*, 510 U.S. at 534 n.19)).

The district court did not address Oracle's entitlement to recover fees under the DMCA independent from the Copyright Act, presumably because it recognized (correctly) that Oracle's DMCA claim was ancillary in this infringement action. *See* 1-ER-6–12. Considering the *Fogerty* factors, there is no basis to affirm the award of $58 million to Oracle under the DMCA.

***Degree of Success Obtained.*** Oracle achieved essentially nothing for its DMCA claim. Rimini prevailed on all of Oracle's claims for damages under the DMCA—totaling approximately ███████ (8-ER-1594; 7-ER-1410)—when

43

Oracle abandoned them pre-trial, foreclosing any argument that Oracle obtained a high degree of success under this claim. Oracle, conversely, obtained only an injunction prohibiting Rimini (like anyone else) from violating the DMCA. Accordingly, this "most critical factor" disfavors any award under the DMCA. *Hensley*, 461 U.S. at 434, 436.

 ***Reasonableness of Parties' Positions.*** It was objectively reasonable for Rimini to successfully defend against Oracle's ███████ in claimed damages under the DMCA. It was also reasonable for Rimini to defend its liability under the DMCA on the ground that it did not violate the DMCA when it created modified (updated) versions of clients' licensed Oracle files for Rimini's clients, and either removed or declined to add Oracle (or Rimini) copyright notices to those modified files. *See* 2-ER-227 (arguing the DMCA only prohibits removing copyright notices from "an exact copy of the original work"); 4-ER-573:5–25. Although the district court disagreed—a ruling Rimini did not appeal, given that Oracle obtained no meaningful relief for its DMCA claim—the law is unsettled on this issue, and other courts in this circuit have agreed with Rimini's position. *See, e.g.*, *Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *9 (N.D. Cal. Jan. 22, 2024) (dismissing DMCA claim for lack of allegations that the works constituted an "identical copy" of the copyrighted work) (collecting cases). It was also reasonable for Rimini to dispute whether each subsequent copy of a file amounted to a new "violation" for which statutory damages

were available—Oracle's theory to parlay the 20 "rewrite" files into an alleged 5,393 violations of the DMCA, before dropping its damages claims altogether. Oracle, conversely, was (as the district court found) unreasonable in dropping those damages claims only on the eve of trial, after forcing Rimini to litigate them for over eight years. *See* 1-ER-8.

**Need for Compensation.** As the district court noted with regard to Oracle's infringement claims, an award was not necessary for Oracle to be "made whole." 1-ER-9; *Fogerty*, 510 U.S. at 525. Oracle voluntarily abandoned its mechanism to be "made whole" for a DMCA violation (through actual or statutory damages), so this factor "does not favor awarding Oracle fees." 1-ER-9.

**Need for Deterrence.** Oracle did not even attempt to argue that an award was necessary to deter Rimini from violating the DMCA going forward. As mentioned, Oracle has already obtained an injunction prohibiting Rimini from doing so. Moreover, the project in which Rimini created modified (updated) versions of Oracle files was indisputably abandoned many years ago. Rimini stopped creating rewritten files approximately a decade ago, and even Oracle conceded that Rimini stopped distributing the existing rewritten files to new customers after "███████████ ██████████████████████████████████████████" (8-ER-1567). So the record is clear that Rimini has already gone years without creating files that violate the DMCA, obviating any need for deterrence.

45

* * *

In light of this Court's reversal and vacatur, it is clear that Oracle is not the prevailing party and is not entitled to have its fees and costs paid by the party that is. This appeal should not have even been necessary, and this Court can and should use the opportunity to reverse the district court and resolve for good that Oracle is not entitled to recover its fees and costs in this suit.

## II. The District Court Committed Multiple Legal Errors That Further Require Reversal or Vacatur of the Fee Award.

While the fee award obviously cannot stand in light of this Court's intervening reversal and vacatur of the merits judgment and injunction, it was erroneous even on the record before the district court. The district court made a series of legal errors in awarding Oracle fees and costs, each of which individually (and certainly in combination) warrants reversal.

1. In holding that the limited success Oracle obtained before it rendered Oracle the prevailing party, the district court emphasized that because Oracle obtained an injunction against Rimini, it *alone* "won the material alteration in the parties' relationship." 1-ER-5; *see also id.* (stating Rimini "did not prevail on the only claim it went to trial on"). This ignored that Rimini *did* obtain (as a plaintiff) a declaratory judgment that its revised support processes for EBS do not infringe Oracle's copyrights. 2-ER-259 ("It is further ordered that, consistent with this and

46

Judge Hicks' prior orders in this case, Rimini is entitled to a declaration of non-infringement as to its EBS support processes," and the "Court so declares.").

More broadly, it ignored that Rimini's successful defenses on the vast majority of Oracle's claims before and during trial *are also* "material alteration[s] in the parties' relationship" (1-ER-5) that Rimini obtained in this suit. A "material alteration" is not limited to obtaining injunctive relief, but also encompasses obtaining a judgment or dismissal of claims that a plaintiff is "judicially precluded from refiling," including claims of monetary liability. *Cadkin*, 569 F.3d at 1150; *Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir. 2019); *accord Lackey*, 604 U.S. at ---, 2025 WL 594737, at *4 (prevailing party is party "who successfully prosecutes the action *or successfully defends against it*" (emphasis added)). And that includes the defeat of claims voluntarily dismissed with prejudice after eight years of litigation. *See Zenith Ins. Co.*, 108 F.3d at 207.

By counting (minimal) victories by a copyright plaintiff and ignoring (significant) victories by a copyright defendant, the district court failed to encourage parties "to litigate meritorious … defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims[.]" *Kirtsaeng*, 579 U.S. at 202 (alterations omitted). And it violated the fundamental tenet of fee-shifting law that entitlement to fees be determined in an "evenhanded" manner in which "[p]revailing plaintiffs and prevailing defendants are to be treated alike," which itself necessitates reversal.

*Fogerty*, 510 U.S. at 534–35 ("Because the Court … erroneously held petitioner, the prevailing defendant, to a more stringent standard than that applicable to a prevailing plaintiff, its judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.").

**2.** The failure to conduct an "evenhanded" analysis (*Fogerty*, 510 U.S. at 534) also infected the district court's weighing of the parties' "degree of success obtained"—the "most critical factor" in assessing fees under the Copyright Act (*Hensley*, 461 U.S. at 434, 436). The district court ignored Rimini's declaration of non-infringement as to EBS, and dismissed the significant Process 2.0 victories it obtained as a defendant (on EBS, JDE, Siebel, and important elements of Database and PeopleSoft), as well as *all* of Oracle's $1.4+ billion in claimed damages. All that mattered to the district court was that Oracle obtained some infringement findings and corresponding injunctive relief as to one product line, even though it was a small fraction of what Oracle alleged. Properly considered, Oracle's relative degree of success was minimal in context, and this factor either disfavored an award or (at best for Oracle) was a wash.

**3.** The district court also erred in weighing the "objective reasonableness" of the parties' respective positions. *Tresona Multimedia, LLC*, 953 F.3d at 653. It acknowledged that "Rimini prevailed on some of its arguments, and it made other arguments in good faith even though the Court ultimately disagreed with them."

48

1-ER-8.  But it went on to conclude that "the core position Rimini took in this case"—"that Rimini had changed its practices already found infringing in [*Rimini I*]"—"was objectively baseless," and that Rimini knew the position was "false when it filed this case" "in an alleged attempt to establish that its 'Process 2.0' did not infringe Oracle's copyrights."  1-ER-8–9.

That analysis made no sense even on the record before the district court. Rimini *prevailed* on the majority of critical issues even before its victories on appeal. *See supra* at pp. 1–2, 6–16, 46–48.  And just one month after the district court held it "was objectively baseless" for Rimini to take the position that its revised support processes were different from its previous processes and non-infringing, this Court credited the "two major changes" Rimini implemented in "transition[ing] its client support process to 'Process 2.0'": "(1) switching from local-hosting to *remote-hosting*" of client environments, "and (2) switching from cross-used *generic* development environments to *client-specific* development environments."  *Rimini*, 81 F.4th at 849 ("Process 2.0 requires Rimini's clients to host development environments on their own systems, which Rimini can access remotely.  Moreover, under Process 2.0, Rimini no longer locally hosts any Oracle environments on its own systems.").

**4.**  The district court likewise found that the need for deterrence supported a fee award because of its erroneous conclusion that Rimini had not "changed its

processes to avoid infringing Oracle's copyrights." 1-ER-9. Again, this analysis inexplicably ignored all of Rimini's Process 2.0 victories and is contrary to this Court's recognition of the fundamental changes in Rimini's support processes in Rimini's successful appeal in the *Rimini I* litigation. 81 F.4th at 849. The district court also said deterrence was necessary in part because of Judge Hicks's ruling in *Rimini I* that Rimini was a "recidivist infringer" and holding it in contempt. 1-ER-9. But Rimini's successful appeal of that contempt order reversed and vacated those decisions in significant part. *Rimini*, 81 F.4th at 847.

**5.** The "pivotal criterion" for any fee award is whether it would further "the purposes of the Copyright Act." *Berkla*, 302 F.3d at 923. Yet the district court, after concluding that an award here would *not* further the purposes of the statute, inexplicably awarded Oracle $58 million anyway. 1-ER-10–11 (finding the factor "a mixed bag that nets out to neutral"). That alone warrants reversal. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) ("Fees are proper under [the Copyright Act] when either successful prosecution or successful defense of the action furthers the purposes of the Copyright Act.").

The district court's aforementioned errors led it to consider this touchstone consideration "neutral," when it in fact actively weighed against an award to Oracle on the record before the district court. As noted above, successful defenses to infringement claims "further the policies of the Copyright Act every bit as much as

a successful prosecution of an infringement claim" (*Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996)), and the district court conclusorily stated that because Rimini had "some" "meritorious defenses," but others that it deemed "objectively baseless," the factor netted out to neutral. 1-ER-10–11. This ignores both that Rimini *also* prevailed on its own claim for a declaration of non-infringement, *and* prevailed on far more of its defenses than Oracle did claims. And as explained above (*supra* at pp. 19–20, 27, 29–38), there is no basis for concluding that Rimini took "objectively baseless" positions on the limited infringement claims it lost before the district court (that were subsequently endorsed by this Court on appeal).

**6.** The district court applied an erroneous standard to determine whether this was an "exceptional" case warranting an award of fees when it treated Rimini's supposed "willfulness" in violating the Lanham Act as sufficient to support a fee award. Courts *must* consider the totality of circumstances in deciding whether a Lanham Act case is the "rare" one warranting an award of fees (*BillFloat Inc.*, 105 F.4th at 1278), and numerous considerations on the record before the district court establish that this is not such a case, each of which the court impermissibly ignored. *See supra* at pp. 39–42.

## III. The $58 Million Award Is Unreasonable and Excessive.

If the Court does not reverse or vacate the $58 million award in full, the award should (at a minimum) be drastically reduced.

51

"The award of fees for hours spent pursuing an unsuccessful result cannot be sustained." *Gonzalez v. Allied Collection Servs., Inc.*, 852 F. App'x 264, 268 (9th Cir. 2021). Now that nearly all of Oracle's success in the case has been reversed, the amount of fees the district court awarded is completely untethered to the success Oracle achieved. In cases where a fee-seeking party "has achieved only limited success," the Supreme Court in *Hensley* instructed district courts to "award only that amount of fees that is reasonable in relation to the results obtained." 461 U.S. at 431, 440. And while district courts have some discretion in determining reasonableness, that discretion "must be exercised in light of the considerations [*Hensley*] ha[s] identified." *Id.* at 437.

1. The district court committed legal error in assessing reasonableness by reversing the parties' burdens, requiring Rimini to establish the fees to which Oracle was *not* entitled. *See*, *e.g.*, 1-ER-14 (stating *Rimini's* expert did not provide "enough information" "to apportion fees based [on] the claims Oracle prevailed on" where Oracle did not submit its own expert report, let alone billing entries and other evidence with sufficient specificity to do so); 1-ER-15 (declining to apply "across-the-board percentage reductions in Oracle's fees" to account for its limited overall success because "it is *possible* that the amount deducted … is overinclusive" and "somewhat overstated because Rimini's expert is the one providing the numbers" (emphasis added)). In limited success contexts, "*the fee applicant* bears the burden

52

of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437 (emphasis added). Indeed, "[t]he evidentiary burdens governing fee motions are well established. The applicant has an initial burden of production, under which it must produce satisfactory evidence establishing the reasonableness of the requested fee." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (quotations omitted).

There is no requirement that the party opposing fees establish that the requested fees are unreasonable. "If the applicant discharges its legal obligation as to the burden of production, the court then proceeds to a factual determination as to whether the requested fee is reasonable." *$28,000.00*, 802 F.3d at 1105. The Supreme Court has been clear that *the fee seeking party's* documentation should enable "a reviewing *court* to identify distinct claims." *Hensley*, 461 U.S. at 437 (emphasis added).

The district court's chief reason for declining to apportion Rimini's evidence-based reductions was that it resulted in an "unrealistically low" award. 1-ER-14. Specifically, it found that Rimini "does not give the Court enough information to assess the validity" of an apportionment. 1-ER-14. But it was *Oracle's* burden to provide the court sufficient information—and Rimini's expert reports explained in detail how Oracle's billing records made that impossible. *See, e.g.*, 7-ER-1334–37

53

(recounting examples of block billing and vague billing entries that made it impossible to conduct the necessary analysis); 7-ER-1336 ("███████████████

████████████████████████████ "").

From Oracle's plainly inadequate records, it was possible to identify "at most only ███████████████████ in fees associated with specific claims and issues on which Oracle prevailed [before the district court], such as PeopleSoft, the DMCA, and the Lanham Act." 7-ER-1337. Oracle should have suffered the consequences of its inadequate showing. *Cf. $28,000.00*, 802 F.3d at 1105 ("In this case, the government presented no evidence in opposition to the fee application. It is clear, however, that the applicant's initial duty of production is not excused by lack of opposition."). It was not Rimini's responsibility to apportion Oracle's records. *See id.* (agreeing that a party opposing fees is "not required to put on any evidence" where party seeking fees has "failed to meet their initial burden of establishing the actual number of attorney hours" (citing *Bode v. United States*, 919 F.2d 1044, 1048 (5th Cir. 1990))); *see also Hensley*, 461 U.S. at 437.

But instead of analyzing whether Oracle had met its burden, the district court reduced Oracle's fees only in areas where *Rimini* had successfully identified unreasonable hours. It explained that it did not apply further reductions because it found "some of Rimini's proposed approaches for fee reductions unpersuasive." 1-ER-13. This, too, reverses the *Hensley* requirement. It is Oracle's burden to

establish the reasonableness of its request. And even absent complete information from the fee-seeking party, it is the district court's duty to make the appropriate adjustments to account for the party's limited success. *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) ("[T]he impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award[.]"). It was not Rimini's burden or duty to establish the *unreasonableness* of Oracle's hours.

**2.** When a district court calculates a fee award in a mixed-results case, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 435–36. And "[i]n judging the [] level of success and the reasonableness of hours spent achieving that success, a district court should give primary consideration to the amount of damages awarded as compared to the amount sought." *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) (cleaned up). The district court ignored these requirements in calculating reductions to Oracle's fee request, as is clear from the grossly inflated $58 million award.

*First*, the district court did not adequately reduce the award to account for Oracle abandoning its claims for more than $1.4 billion in damages on the eve of trial. This same issue was addressed in *McCown*, where this Court reversed the district court for failing to adjust a fee award downward based on lost claims and damages that "fell far short of [plaintiff's] goal." 565 F.3d at 1104–05; *see also*

*Corder v. Brown*, 25 F.3d 833 (9th Cir. 1994) (reversing $240,695 fee award and remanding to the district court to consider plaintiffs' limited success, where plaintiffs recovered only $24,006 out of the $1,000,000 they originally sought); *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir. 1998) (reversing district court's fee award and remanding due to limited success where plaintiff won but received zero damages, later amended to $1).

The downward adjustment requirement applies even where a district court finds, as here, "a common core of facts between successful and unsuccessful claims." 1-ER-14. *Hensley* explicitly states that a fee award may be excessive where "a plaintiff has achieved only partial or limited success[.] . . . This will be true even where the plaintiff's claims were interrelated[.]" 461 U.S. at 436.

Here, the district court gestured at this requirement in applying a small reduction for work on third-party subpoenas and Oracle's mock jury exercise, which was held just prior to Oracle abandoning its damages claims in favor of a non-jury trial. The district court acknowledged that it would be "unreasonable to award fees to Oracle for work that it decided to render unnecessary, particularly after years of litigation during which Rimini understood it was defending against some $1.4 billion in alleged damages." 1-ER-14. Rimini agrees. But if there were "years" of unnecessary work performed in connection with Oracle's unsuccessful damages claims, then the district court was required to reduce Oracle's fee award consistent

with that finding. "[Oracle's] victory clearly fell far short of [its] goal; therefore, it is unreasonable to grant [its] attorneys more than a comparable portion of the fees and costs they requested." *McCown*, 565 F.3d at 1104–05.

*Second*, because the district court erroneously burdened Rimini with identifying unreasonable fees, it did not make necessary further reductions to Oracle's $68 million request. This error is on full display in the district court's dismissal of Rimini's experts, where it repeatedly declined to make reductions because of what *they* didn't show. For example, the district court declined to apportion fees for Oracle's unsuccessful claims because Rimini's expert's estimated apportionment was "unrealistically low" and Rimini's expert did "not give the Court enough information" regarding which entries should be apportioned. 1-ER-14. This erroneously placed the burden on Rimini when it belonged to Oracle, and required Rimini to catalogue reasonable reductions, which is the *court's* duty.

The district court compounded its error by ignoring the expert evidence Rimini *did* present, which gave the court the necessary information to make reasonable reductions. For example, the court did not make any reductions for Oracle's billing transgressions (including block billing, vague entries, long billing days, redacted entries, and duplicate entries) because Rimini's expert "[did] not show the Court the billing entries Rimini is objecting to." 1-ER-18. But this ignores the declaration of William G. Ross, which presented dozens and dozens of instances

57

of poor billing practices by Oracle's counsel. 7-ER-1298–1324. The court also erroneously awarded Oracle millions of dollars for vague and redacted entries. *See Shame On You Prods., v. Banks.*, 893 F.3d 661, 670 (9th Cir. 2018) ("[R]edactions in time entries to preserve secrecy of work product are permissible as long as they do not impair the ability of the court to judge whether the work was an appropriate basis for fees."). It refused to make reductions for those entries even though the Ross Declaration catalogued numerous examples such as this:



7-ER-1303. The district court did not explain why it declined to make any reductions in light of this evidence, contradicting Supreme Court precedent requiring courts to provide "clear explanation[s] of [the] reasons for the[ir] fee award[s]." *Hensley*, 461 U.S. at 437.

Accordingly, Oracle's $58 million award cannot stand, even if this Court holds that Oracle is still entitled to fees.

## CONCLUSION

The Court should reverse or (at least) vacate in full the judgment awarding fees and costs to Oracle. At the absolute minimum, it should vacate the judgment with instruction to the district court to reduce the amount awarded.

Respectfully submitted,

Dated: March 11, 2025

s/ Blaine H. Evanson

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
(202) 682-7511
Mark.Perry@weil.com

Jeremy M. Christiansen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Eric D. Vandevelde
Blaine H. Evanson
Casey J. McCracken
Chris Whittaker
Joseph A. Gorman
James A. Tsouvalas
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
(949) 451-3805
BEvanson@gibsondunn.com

*Attorneys for Defendants-Appellants Rimini Street, Inc. and Seth Ravin*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** _____24-5979_____

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** s/ Blaine H. Evanson          **Date** March 11, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**                                          *New 12/01/18*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-5979_____

I am the attorney or self-represented party.

**This brief contains  13,648  words,** including   9   words manually counted

in any visual images, and excluding the items exempted by FRAP 32(f). The brief's

type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
    29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select
    only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** s/ Blaine H. Evanson_____        **Date**   March 11, 2025____
*(use "s/[typed name]" to sign electronically-filed documents)*

---

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                    *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing Public Redacted Version of Opening Brief for Appellants Rimini Street, Inc. and Seth Ravin with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 11, 2025.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.


Dated:  March 11, 2025

s/  Blaine H. Evanson
Blaine H. Evanson

## ADDENDUM

Pursuant to Circuit Rule 28-2.7, this addendum includes the following pertinent statutory provisions, reproduced verbatim:

**Exhibit A**:  15 U.S.C. § 1117

**Exhibit B**:  17 U.S.C. § 117

**Exhibit C**:  17 U.S.C. § 505

**Exhibit D**:  17 U.S.C. § 1203

# EXHIBIT A

## 15 U.S.C. § 1117

## § 1117 – Recovery for violation of rights

(a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(b) Treble damages for use of counterfeit mark

In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title or section 220506 of title 36, in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of—

(1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or

(2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of

the goods or services would put the goods or services to use in committing the violation.

In such a case, the court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

(c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

(d) Statutory damages for violation of section 1125(d)(1)

In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

(e) Rebuttable presumption of willful violation

In the case of a violation referred to in this section, it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or

knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation. Nothing in this subsection limits what may be considered a willful violation under this section.

# EXHIBIT B

## 17 U.S.C. § 117

## § 117 – Limitations on exclusive rights: Computer programs

(a) Making of Additional Copy or Adaptation by Owner of Copy.—Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:

> (1) that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or
>
> (2) that such new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.

(b) Lease, Sale, or Other Transfer of Additional Copy or Adaptation.—

Any exact copies prepared in accordance with the provisions of this section may be leased, sold, or otherwise transferred, along with the copy from which such copies were prepared, only as part of the lease, sale, or other transfer of all rights in the program. Adaptations so prepared may be transferred only with the authorization of the copyright owner.

(c) Machine Maintenance or Repair.—Notwithstanding the provisions of section 106, it is not an infringement for the owner or lessee of a machine to make or authorize the making of a copy of a computer program if such copy is made solely by virtue of the activation of a machine that lawfully contains an authorized copy of the computer program, for purposes only of maintenance or repair of that machine, if—

> (1) such new copy is used in no other manner and is destroyed immediately after the maintenance or repair is completed; and
>
> (2) with respect to any computer program or part thereof that is not necessary for that machine to be activated, such program or part thereof is not accessed or used other than to make such new copy by virtue of the activation of the machine.

(d) Definitions.—For purposes of this section—

(1) the "maintenance" of a machine is the servicing of the machine in order to make it work in accordance with its original specifications and any changes to those specifications authorized for that machine; and

(2) the "repair" of a machine is the restoring of the machine to the state of working in accordance with its original specifications and any changes to those specifications authorized for that machine.

# EXHIBIT C

## 17 U.S.C. § 505

### § 505 – Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

# EXHIBIT D

## 17 U.S.C. § 1203

## § 1203 – Civil remedies

(a) Civil Actions.—

Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.

(b) Powers of the Court.—In an action brought under subsection (a), the court—

>(1) may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation, but in no event shall impose a prior restraint on free speech or the press protected under the 1st amendment to the Constitution;

>(2) at any time while an action is pending, may order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation;

>(3) may award damages under subsection (c);

>(4) in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof;

>(5) in its discretion may award reasonable attorney's fees to the prevailing party; and

>(6) may, as part of a final judgment or decree finding a violation, order the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded under paragraph (2).

(c) Award of Damages.—

>(1) In General.—Except as otherwise provided in this title, a person committing a violation of section 1201 or 1202 is liable for either—

>>(A) the actual damages and any additional profits of the violator, as provided in paragraph (2), or

(B) statutory damages, as provided in paragraph (3).

(2) Actual Damages.—

The court shall award to the complaining party the actual damages suffered by the party as a result of the violation, and any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages, if the complaining party elects such damages at any time before final judgment is entered.

(3) Statutory Damages.—

(A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.

(B) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.

(4) Repeated Violations.—

In any case in which the injured party sustains the burden of proving, and the court finds, that a person has violated section 1201 or 1202 within 3 years after a final judgment was entered against the person for another such violation, the court may increase the award of damages up to triple the amount that would otherwise be awarded, as the court considers just.

(5) Innocent Violations.—

(A) In general.—

The court in its discretion may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation.

(B) Nonprofit library, archives, educational institutions, or public broadcasting entities.—

(i) Definition.—

In this subparagraph, the term "public broadcasting entity" has the meaning given such term under section 118(f).

(ii) In general.—

In the case of a nonprofit library, archives, educational institution, or public broadcasting entity, the court shall remit damages in any case in which the library, archives, educational institution, or public broadcasting entity sustains the burden of proving, and the court finds, that the library, archives, educational institution, or public broadcasting entity was not aware and had no reason to believe that its acts constituted a violation.